CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 02, 2026
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **REECE GENE MULLINS,** | ) |
| Plaintiff, | ) Case No. 7:23CV00149 |
| v. | ) **OPINION AND ORDER** |
| **OFFICER RINER, et al.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Reece Gene Mullins, Pro Se Plaintiff; Joseph A. Piasta,* JOHNSON, AYERS & MATTHEWS, *P.L.C., Roanoke, Virginia, for Defendants.*

The plaintiff, a Virginia inmate proceeding pro se, has filed a civil rights action under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights by failing to protect him and used excessive force against him. The matter is before me on a Motion for Summary Judgment filed by the defendants, Officer Riner and Officer Wheale,[1] who assert that Mullins has failed to exhaust his administrative remedies. The motion having been fully briefed by the parties is now ripe for consideration. Upon review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted, and Mullins' lawsuit will be dismissed due to his failure to exhaust his administrative remedies.

---

[1] By Opinion and Order dated July 16, 2024, I dismissed all claims against the Southwest Virginia Regional Jail Authority ("SWVRJA"), leaving only the claims against Officer Riner and Officer Wheale.

I. BACKGROUND.

I have previously described Mullins' factual allegations as follows:

On November 25, 2022, Mullins was housed on the opt tier of Pod 4-A at the SWVRJA facility in Duffield as a pretrial detainee. An inmate on the bottom tier of that housing unit had a "protective keep away" order against Mullins. Am. Compl. 2, ECF No. 41. While the inmates on the bottom tier were out of their cells for morning "medicine pass," Officer Riner allegedly came to Mullins cell on the top tier and asked "did [he] want out for medicine pass." *Id.* Mullins alleges that jail authority protocol did not allow inmates from the two tiers to be out of their cells at the same time and did not allow an inmate with a keep away order to be out of his cell with the inmate who was the subject of that order.

Mullins elected to leave his cell. Mullins asserts that these events "resulted in [Mullins] getting into a fight with another inmate." *Id.* at 2–3. During this altercation, Riner "came down from the top tier and grabbed [Mullins] from behind." *Id.* at 3. Riner's actions "resulted in [Mullins] left bicep being tor[n] also the left pectoral muscle." *Id.* Mullins alleges that his bicep was visibly out of place on the side of his left arm, the arm turned purple, and he could not properly use it.

Mullins received medical treatment for his injuries. The jail's medical staff told him that he had a pulled muscle and advised him to run hot water on it. Several days later, officers transported Mullins to "Marion Health Institute" and pictures were taken of the injured areas. *Id.* Several weeks later, jail officials sent Mullins to a physical therapist for treatment. The therapist allegedly said that Mullins would "never regain full use of his left arm." *Id.*

After the incident, Mullins asked Riner about what happened. Riner allegedly told Mullins that Officer Wheale "told [Riner] to let [Mullins] out." *Id.* Mullins asserts that the actions taken by Wheale and Riner violated SWVRJA policy.

Op. & Order 2–3, Dkt. No. 54.  Relevant to the subject motion is what happened after the November 25, 2022, incident regarding Mullins' use of the jail's administrative grievance process.

According to an affidavit of Jeannie Patrick, Administrative Lieutenant for the SWVRJA, the SWVJRA has grievance procedures outlined in an "Inmate Handbook."  Def.'s Mot. Summ. J. Attach., Patrick Aff. 1, Dkt. No. 56-1.  Patrick's Affidavit states that Mullins "did not submit any timely informal requests . . . regarding the alleged incident . . . . Rather, he submitted [a] medical grievance . . . on December 1, 2022."  *Id.* at 2–3.  Mullins' December 1, 2022, medical grievance stated that "I have hurt my arm to the point its purple I need to see a outside doctor to get this taken care of.  I need medical attention beyond what this facility can offer before it does errovckable [sic] damage to my arm to the point of no fixing."  *Id.* at 3.  Mullins appealed the response to that grievance.  *Id.*  However, Mullins' "first use of the grievance procedures specifically referencing the November 25, 2022, incident was on March 2, 2023," and he filed a medical grievance and two security requests at that time.  *Id.*  Those grievances and requests state as follows:

> i was injured on nov-25, 2022 in which officer riner let me out with bottom tier to get meds knowing another inmate on the bottom tier had a keep away on me.  Also i am the only inmate on top tier that was let out with bottom for meds which resulted in a fight were the same said officer used excissive force and ripped my muscle and damaged my rotator cuff.  My arm was purple from top to bottom i tried to get the medical staff to send me for proper medical care this facility could not properly provide.  I was denied any proper care, i was told run hot water

> on it. this is a injury that due to medical neglegence as resulted in er-reversable [sic] damage to my arm and chest. i need to see a outside doctor who specializes in this area but was denied. Can i receive proper attention from a specialist?

Patrick Aff. Ex. D 1, Dkt. No. 56-5.[2]

> i need a copy of the incident report from nov 24 or couple days later when i was charged with fighting William flenor in 4-a…after the officer let me out on bottom tier pill call and i was top tier………

*Id.* at 2.

> could you please save the video footage of the incident on nov-25,2022. When officer ryner let me out for pill call with the bottom tier in 4-a pod knowing that another inmate had a keep away and that proper procedure states top n bottom tiers are to be let out separate for pill call.

*Id.* at 3. Patrick's Affidavit further notes that Mullins had submitted "more than 300 requests and grievances" between February 16, 2021 and March 13, 2023. Patrick Aff. 3, Dkt. No. 56-1.

In response to the defendants' motion, Mullins provides several additional exhibits, including a "Sick Call/Medical" request dated November 30, 2022. Pl.'s Resp. Ex. F., Dkt. No. 73. That request states that

> Hey my arm is no better!!! I need to get this fixed! It hurts pretty bad can't really use it…you guys was gonna send me to er for stitches. But my whole arm turns purple and I lose the use of it and you say o its

---

[2] Mullins received a response to this grievance on March 2, 2023, which stated that he would be seen by an onsite provider who would determine the need for an outside specialist. Mullins then appealed the response, objecting to the fact that the provider who he was referred to was not an orthopedic specialist. In response to the appeal, a nurse indicated that Mullins was again seen by an onsite provider.

> OK….please send blackstar to hospital to get proper attention to my injuries…. Thank you……ouch

*Id.* In response to the request, a nurse stated that Mullins was "seen by the dr, the dr has an appointment for a follow up appointment." *Id.* Mullins also submitted for the court's consideration thirteen additional medical requests related to his shoulder injury, dated between December 2022 and July 2023.

Mullins filed his original § 1983 complaint in this court in March 2023; however, following the defendants' first Motion to Dismiss, I granted Mullins leave to file an Amended Complaint, which now serves as operative pleading in this case. The defendants have since filed the Motion for Summary Judgment, arguing that Mullins failed to exhaust administrative remedies before bringing this § 1983 claim.

## II. Discussion.

### A. Standard of Review.

The Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312-13 (4th Cir. 2013). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence

from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> B.  Mullins Failed to Exhaust Available Administrative Remedies as Required by the Prison Litigation Reform Act.

Under the Prison Litigation Reform Act, a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted his available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, properly exhaust all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

A prison official has the burden to prove an inmate's failure to exhaust his available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion

occurred or that administrative remedies were unavailable through no fault of the inmate. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished).

Exhibit A to the Affidavit of Lieutenant Patrick, attached to the defendants' motion for summary judgment is the Inmate Handbook applicable to SWVRJA inmates, which includes the Inmate Grievance Procedure. Patrick Aff. Ex. A 28–29, Dkt. No. 56-2. The Inmate Grievance Procedure provides steps for filing a grievance, beginning with the requirement that an inmate "make a good faith attempt to resolve the issue through informal channels by use of a Request Form or Medical Request Form which are located on the Kiosk, where available." *Id.* at 28. Thereafter, the inmate "may file a grievance upon dissatisfaction in the answer to the request form **within 7 days of the occurrence**." *Id.* Then, "[t]he validity of the grievance will be reviewed to determine if it meets the definition of a grievance and if proper informal resolution attempts have been made," and if determined to be invalid, "it will be returned to [the inmate] **within nine (9) days of receipt** stating the reason it is not valid." *Id.* Inmates then "may appeal a grievance response within 7 days. *Id.* at 28–29. Furthermore, "[a]buse of the Grievance Procedure shall mean deliberate misuse of the grievance procedure, (e.g. filing an excessive number of grievances), and or falsification of information submitted for review." *Id.* at 28.

The primary contention here is whether Mullins exhausted all available administrative remedies following the underlying incident that occurred on

November 25, 2022. Five days after the incident, Mullins submitted a medical request regarding pain in his arm, for which medical treatment was initiated. Pl.'s Resp. Ex. F, Dkt. No. 73. Despite the defendants' insistence that no informal request was submitted, Mullins' November 30, 2022, medical request could be construed as an attempt to informally resolve the issue in accordance with the first step of the grievance procedure requirements.

In any event, Mullins was unsuccessful in his adherence to the next step in the grievance process, which is dispositive of the issue. Where Mullins went wrong was by failing to submit a grievance related to any claim of excessive force, failure to protect, and/or deliberate indifference to his safety until March 2023, well beyond the seven-day deadline. In this vein, the Fourth Circuit has explained that, while a prisoner is not required to specifically name individuals in grievances, he must submit a grievance concerning the particular issue claimed in order to give "prison officials 'a fair opportunity to address the problem that [eventually] form[ed] the basis of the lawsuit.'" *Moore v. Bennett*, 517 F.3d 717, 726, 729 (4th Cir. 2008) (quoting *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004)).

The only timely grievance that Mullins submitted was the Medical Grievance dated December 1, 2022. Patrick Aff. Ex. C, Dkt. No. 56-4; Pl.'s Resp. Ex. A, Dkt. No. 73. That grievance was specifically limited to pain Mullins was experiencing in his arm and requested medical attention. The grievance in no way raised any

issues regarding any prison official's alleged involvement in the injury. Indeed, Mullins even stated in that grievance that "[*I*] have hurt my arm." *Id.* (emphasis added). This grievance would not have provided the prison authorities an opportunity to address any allegations of excessive force, failure to protect, or deliberate indifference to Mullins' safety—the claims presently alleged in this forum. As stated, the only grievance that would have provided such an opportunity to address the issues was the Medical Grievance submitted on March 2, 2023. Patrick Aff. Ex. D, Dkt. No. 56-5; Pl.'s Resp. Ex. K, Dkt. No. 73. However, Mullins submitted that grievance more than three months following the November 25, 2022, incident, in violation of the grievance procedure's requirement that it be submitted within seven days of the occurrence. *See Woodford*, 548 U.S. at 90–91 ("[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Therefore, the defendants have proved that there is no genuine issue of material fact regarding Mullins' failure to exhaust his administrative remedies.

Furthermore, Mullins does not argue in his response that administrative remedies were unavailable to him, and there is nothing in the record which would indicate their unavailability. *See Moore*, 517 F.3d at 725 ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his

own, was prevented from availing himself of it."). In fact, Mullins' own exhibits demonstrate that he availed himself to the grievance process on multiple occasions and received medical treatment as a result. Moreover, as indicated in Patrick's Affidavit, Mullins had submitted more than 300 grievances or requests during his time incarcerated at SWVRJA. Therefore, Mullins has failed to demonstrate a genuine issue as to whether he exhausted all available administrative remedies.

Finally, dismissal of this matter with prejudice is appropriate considering that Mullins can no longer initiate the exhaustion process due to the expiration of the time for filing a grievance related to the November 25, 2022, occurrence. *Moore v. McMurry*, No. 7:20-cv-00164, 2021 WL 4303775, at *4 (W.D. Va. Sept. 21, 2021), appeal dismissed, No. 21-7484, 2022 WL 1164921 (4th Cir, Mar. 1, 2022).

### III. CONCLUSION.

For the foregoing reasons, it is **ORDERED** that the Defendants' Motion for Summary Judgment, Dkt. No. 56, is GRANTED for failure to exhaust administrative remedies under 42 U.S.C. 1997e(a).

A separate Judgment will be entered herewith.

ENTER: March 2, 2026

/s/ JAMES P. JONES
Senior United States District Judge